UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER NICHOLSON,

           Plaintiff,

v.

UNKNOWN PARTY et al.,

           Defendants.

_____/

Case No. 1:24-cv-960

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims on the basis of immunity and for failure to state a claim: (1) Plaintiff's official capacity claims; and (2) Plaintiff's Fourteenth Amendment equal protection claims. Plaintiff's personal capacity Eighth Amendment claims against Defendants, as well as his state law claims alleging violations of MDOC policy, remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

which he complains occurred at that facility. Plaintiff sues Licensed Practical Nurse Unknown Merz and Registered Nurse Unknown Party in their official and personal capacities.

On April 9, 2024, Plaintiff used the emergency light in his cell to notify non-party Officer Bladzik that he needed medical attention. (Compl., ECF No. 1, PageID.3.) Plaintiff told Officer Bladzik that he had fallen down the stairs and "was having extreme pain in [his] left ankle." (*Id.*) Plaintiff contends that his ankle "was swollen to where you could not tell the difference between [his] ankle and foot." (*Id.*) Plaintiff alleges that another officer saw him fall down the stairs. (*Id.*)

Officer Bladzik contacted healthcare and spoke to Defendant Merz. (*Id.*) Plaintiff claims that non-party Officers Cochrane and Bladzik told him to return to his cell, and Officer Cochrane told Plaintiff that healthcare said to fill out a kite and that he would be called. (*Id.*) Plaintiff "limped back down to [his] cell," "[b]arely able to move . . . or rotate [his] ankle." (*Id.*)

Plaintiff alleges that he had already filled out a healthcare kite. (*Id.*) Over the next few hours, Plaintiff "periodically complained" to the housing unit officer; the officer contacted health care again, stating that "healthcare was just brushing it off." (*Id.*)

After lunch, Plaintiff spoke to non-party Officer Jacobs, who told Plaintiff that she and Officer Bladzik had just got off the phone with healthcare. (*Id.*) Officer Jacobs told Plaintiff that "she didn't know what was going on but they said ([Defendant] Merz) that they would get to it when they did." (*Id.*)

At around 3:00 p.m., Plaintiff stopped Officer Cochrane during rounds and showed Officer Cochrane his foot. (*Id.*, PageID.4.) Plaintiff asked "who they had been talking to in healthcare all day because [he] was in pain." (*Id.*) Officer Cochrane left and came back "with a grievance stating that Officer [Bladzik] and [Officer] Jacobs said that it had been [Defendant] Merz and to write a grievance." (*Id.*) Plaintiff wrote the grievance, and as he was walking up the stairs to submit the

grievance, his foot gave out and he fell. (*Id.*) Plaintiff was finally escorted to the healthcare department. (*Id.*)

On April 25, 2024, Plaintiff received a response to his grievance stating that Defendant Merz was told by Defendant Unknown Party to have Plaintiff fill out a kite, which Plaintiff had already done. (*Id.*) Plaintiff appealed, and non-party Patricia Lamb, in the Step II response, wrote: "It is acknowledge[d] that prompt evaluation by a registered nurse would have been the preferred [response] to the initial report." (*Id.*)

Plaintiff alleges that between April 9, 2024, and July 2, 2024, he submitted numerous healthcare kites "complaining of continued pain in [his] foot an[d] ankle." (*Id.*, PageID.5.) Plaintiff contends that he was also experienced lower back pain up until June 15, 2024. (*Id.*)

Plaintiff was eventually seen by non-party Dr. Crompton. (*Id.*) Plaintiff told Dr. Crompton that his ankle was "constantly popping" and that it was painful for him to go up and down the ladder to his top bunk. (*Id.*) Plaintiff also mentioned his lower back pain. (*Id.*) Plaintiff requested "a lower bunk detail or special accommodation until [he was] completely healed." (*Id.*) Dr. Crompton said, "Not a chance." (*Id.*) Plaintiff subsequently submitted numerous kites and another grievance. (*Id.*)

Plaintiff goes on to state that he has been experiencing ongoing retaliation and deliberate indifference from healthcare staff, as well as non-parties Warden Burgess, Assistant Deputy Warden Erway, and Grievance Coordinator T. Bassett. (*Id.*, PageID.6.) Plaintiff claims that his healthcare kites are not responded to, and his grievances are either denied or not accepted. (*Id.*) Plaintiff suggests that this is "to try and bar [his] access to the courts." (*Id.*) Plaintiff also alleges that his bottom bunk detail was revoked before he was fully healed, causing him to "fall[] out [of] the bunk." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims for deliberate indifference to serious medical needs, as well as Fourteenth Amendment equal protection claims. (*Id.*, PageID.7–8.) Plaintiff also suggests that Defendants disregarded MDOC Policy Directive 03.04.100, regarding health services. (*Id.*)[2] Plaintiff seeks injunctive relief in the form of an order for "a second opinion of [his] injury from an outside doctor [and an] X-ray to determine if [his] ankle was broken and healed incorrectly." (*Id.*, PageID.9.) Plaintiff also requests compensatory and punitive damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2] Although Plaintiff refers to ongoing retaliation and attempts to bar his access to the courts (Compl., ECF No. 1, PageID.6), he sets forth no facts suggesting that the named Defendants were involved in these alleged actions. Accordingly, the Court does not construe Plaintiff's complaint to assert First Amendment retaliation and access to the courts claims against Defendants.

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

### A.       Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.       Official Capacity Claims

As noted *supra*, Plaintiff has sued Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Defendants are, therefore, entitled to immunity with respect to Plaintiff's official capacity claims for damages.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 114 n.25.

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581

(6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court explained why the doctrine of *Ex parte Young* could not be extended to authorize retrospective relief:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra*, 465 U.S. at 102. *See also Milliken v. Bradley*, 433 U.S. 267 (1977). But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Id*. at 68.

Here, Plaintiff does not allege the existence of an official policy or practice that Defendants continue to enforce. Nor does he suggest that the actions alleged in the complaint are likely to happen to him again. Instead, Plaintiff's allegations against Defendants relate solely to past harm, not future risk of harm. Although Plaintiff refers to ongoing retaliation, attempts to bar him from accessing the courts, and failures to respond to his healthcare kites, Plaintiff does not set forth any allegations suggesting that the named Defendants are involved in those ongoing actions. Plaintiff, therefore, does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Thus, Plaintiff cannot maintain his official capacity claims for injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims will be dismissed.

### 2.    Personal Capacity Claims

#### a.    Eighth Amendment Claims

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care for his serious medical needs.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care

to incarcerated individuals, as a failure to provide such care would result in unnecessary suffering without serving any penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Id.* at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As set forth *supra*, Plaintiff alleges that when he fell on April 9, 2024, he experienced extreme pain in his ankle. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges further that his ankle was swollen to the point "where you could not tell the difference between [his] ankle and foot." (*Id.*) Plaintiff states that he was barely able to move or rotate the ankle, and that he had to limp back to his cell. (*Id.*) He also alleges that when he went to submit his grievance, his foot gave out, causing him to fall again. (*Id.*, PageID.4.) Given these allegations, at this stage of the proceedings, the Court concludes that Plaintiff has sufficiently alleged facts regarding a serious medical need.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer,* 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the

conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Rhinehart v. Scutt*, 894 F.3d 721, 750–51 (6th Cir. 2018); *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)). Further, "[w]here the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (6th Cir. 1989)).

Here, Plaintiff alleges that despite numerous calls to healthcare by the housing unit officers, Defendants ignored Plaintiff's complaints concerning his ankle and instead told him to file a

healthcare kite, which Plaintiff had already done. Plaintiff was not taken to healthcare until he fell a second time when his foot gave out. He alleges further that he continued to experience ongoing pain in his ankle and foot, and that he was not seen until much later by non-party Dr. Crompton. At this stage of the proceedings, accepting Plaintiff's allegations as true, the Court concludes that Plaintiff's personal capacity Eighth Amendment claims against Defendants may not be dismissed on initial review.

### b.   Fourteenth Amendment Equal Protection Claims

Plaintiff also asserts that Defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause. (Compl., ECF No. 1, PageID.8.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to identify any comparators and fails to allege any facts suggesting that he was treated differently than others, let alone that the others were similarly situated. Instead, any

allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class of one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### B. Violations of MDOC Policy

Plaintiff suggests that Defendants violated MDOC Policy Directive 03.04.100 by failing to provide adequate treatment. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated MDOC policy fail to state a claim under § 1983.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those

13

interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Plaintiff's personal capacity Eighth Amendment claims against Defendants remain pending. The Court, therefore, will exercise supplemental jurisdiction over Plaintiff's state law claims alleging violations of MDOC policy.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court will dismiss the following claims, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on the basis of immunity and for failure to state a claim: (1) Plaintiff's official capacity claims; and (2) Plaintiff's Fourteenth Amendment equal protection claims. Plaintiff's personal capacity Eighth Amendment claims against Defendants, as well as his state law claims alleging violations of MDOC policy, remain in the case.

An order consistent with this opinion will be entered.


Dated:  October 4, 2024                          /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge

14